UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STATE FARM FIRE & CASUALTY COMPANY
a/s/o MIRIAM PEREZ,

                         Plaintiff,

        -against-

PENTAIR FLOW TECHNOLOGIES, LLC,

                         Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/25/2024

No. 21-cv-6679 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff State Farm Fire and Casualty Company ("Plaintiff" or "State Farm"), as subrogor of Miriam Perez, commenced this action on June 14, 2021, asserting strict products liability, negligence, and breach of warranty claims against Defendant Pentair Flow Technologies, LLC ("Defendant" or "Pentair") for damages arising from a house fire allegedly caused by a pump manufactured by Pentair. (See ECF No. 1.) Presently before the Court is Defendant's Motion for Summary Judgment. (ECF No. 46.) For the following reasons, the Court grants in part and denies in part Defendant's motion.

## **BACKGROUND**

    The following facts are derived from Defendant's Local Rule 56.1 Statement ("Def. 56.1," ECF No. 51), Plaintiff's Response to Defendant's Rule 56.1 Statement ("Pl. 56.1 Response," ECF No. 49), the parties' declarations, and the parties' exhibits,[1] and are not in dispute, except where noted.

---

[1] Citations to "Pl. Ex." refer to the Exhibits attached to the Declaration of Stuart D. Markowitz in Opposition to Defendant's Motion for Summary Judgment. (ECF No. 48.) Citations to "Def. Ex." refer to the Exhibits attached to the Declaration of Adam M. Shienvold in Support of Defendant's Motion for Summary Judgment. (ECF No. 50.)

    Citations to the Deposition of Donald Galler ("Galler Tr.") refer to Pl. Ex. A. Citations to the Deposition of Adam Goodman ("Goodman Tr.") refer to Pl. Ex. B. Citations to the Deposition of Miriam Perez ("Perez Tr.") refer to Def. Ex. C. Citations to the Deposition of Shanti Mann ("Mann Tr.") refer to Def. Ex. D. Citations to the Deposition of

Miriam Perez, subrogee of Plaintiff State Farm, owned a home located at 15 Greenridge Way, Spring Valley, New York (the "Premises"). (Def. 56.1 ¶ 1; Pl 56.1 Response ¶ 1.) Prior to July 15, 2020, State Farm issued an insurance policy to Perez, insuring her against, *inter alia*, covered real property and personal property damage. (Def. 56.1 ¶ 3.) The policy covered the period from November 17, 2019 to November 17, 2020. (Pl. 56.1 Response ¶ 4.)

On July 15, 2020, Shanti Mann, Perez's daughter's fiancé, noticed that the basement of the Premises was flooded, and used a Simer Submersible Utility Pump, 2300-4 (the "Pump") to remove the excess water from the basement. (Pl. 56.1 Response ¶¶ 1, 8-9.) After setting up the Pump, he left the basement. (*Id.* ¶ 9.) Sometime later, while he was outside in the yard, Mann noticed that the Pump had stopped working, at which point he returned to the basement and saw that the Pump had not removed the excess water. (*Id.* ¶ 10.) At this time, the house lights started dimming and Mann heard a popping noise. (*Id.* ¶ 11.) Mann went to unplug the Pump, testifying that as he unplugged it, "the pop, and, like, spark[s] started shooting out the top" right in front of him. (Mann Tr. 36:11-19.) Mann ran up the stairs to exit the basement, and stated he heard the pop again and saw clothes catch fire. (*Id.* 37:5-25.) He then called the fire department, which arrived within five minutes and extinguished the fire. (Pl. 56.1 Response ¶ 13.)

Although Mann could not remember exactly when he purchased the Pump, he stated that he had done so at least one year, and possibly more than two years, before the date of the fire. (Pl. 56.1 Response ¶¶ 6-7.) Prior to the fire, Perez neither purchased or used the Pump. (Def. 56.1 ¶ 5.) As a result of the fire, State Farm, pursuant to its obligations under the insurance policy, paid $285,949.34 to its subrogor Perez. (Shienvold Ex. A ¶ 20.) State Farm now seeks to hold Defendant Pentair, which designed and manufactured the Pump, strictly liable for the damages amount paid. (*Id.* ¶ 32.)

Joseph E. Myers Jr. ("Myers Tr.") refer to Def. Ex. E. Citations to the Deposition of Nicholas S. Vincenzo ("Vincenzo Tr.") refer to Def. Ex. F.

State Farm commenced this action by filing a Complaint on June 14, 2021 in the New York State Supreme Court, County of Rockland, asserting claims for negligence, strict products liability, and breach of warranty. (*See* ECF No. 1.) On August 6, 2021, Pentair removed the action to this Court. (*Id.*) On June 10, 2022, pursuant to a stipulation by the parties, State Farm filed its First Amended Complaint ("FAC"). (ECF No. 25.) For months thereafter, the parties engaged in extensive discovery, which concluded on February 3, 2023. (*See* ECF No. 41.) On June 13, 2023, with leave of the Court, Defendant filed its briefing on the instant motion: Motion for Summary Judgment (ECF No. 46); Memorandum of Law in Support ("Def. Mem.," ECF No. 53); Declaration of Adam M. Shienvold in Support ("Shienvold Decl.," ECF No. 50); Reply ("Reply," ECF No. 52); and its Rule 56.1 Statement ("Def. 56.1," ECF No. 51). That same day, Plaintiff filed its papers: Memorandum of Law in Opposition ("Pl. Opp.," ECF No. 47); Declaration of Stuart D. Markowitz in Opposition ("Markowitz Opp.," ECF No. 48); and its Response in Opposition to Defendant's Rule 56.1 Statement ("Pl. 56.1 Response," ECF No. 49).

## **STANDARD OF REVIEW**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party does not have the burden of proof, the moving party may satisfy its burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 Fed. Appx. 34, 36 (2d Cir. 2013) (summary order).   Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted).  The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted).  Similarly, "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (*citing Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (such affidavits "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact")).  But the mere fact that a non-movant's factual allegations in opposition are "self-serving" does not automatically render them insufficient to defeat summary judgment. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998).  Instead, summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence

of an element essential to that party's case," where "that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

## DISCUSSION

Plaintiff asserts claims for negligence, strict products liability, and breach of warranty, and Defendant seeks to dismiss Plaintiff's FAC in its entirety. For the following reasons, the Court dismisses all of Plaintiff's claims *except* for her claims for negligence and strict products liability based on a manufacturing defect.

As a threshold matter, in failing to address Defendant's arguments in its motion papers, Plaintiff has abandoned its claims for breach of warranty and *re ipsa loquitor*. "After the moving party argues that no genuine issue of material facts exists, it is the obligation of the party opposing summary judgment to show, based upon the record, the existence of genuine issues of fact and to identify why they are material with respect to the claims on which the moving party seeks summary judgment." *Banyan v. Sikorski*, No. 17-CV-4942 (LJL), 2021 WL 2156226, at *3 (S.D.N.Y. May 27, 2021). "Where a counseled party submits a partial opposition, a court may, when appropriate, infer that relevant claims or defenses left undefended are abandoned." *Nemes v. Dick's Sporting Goods, Inc.*, 521 F.Supp.3d 328, 347 (S.D.N.Y. 2021) (citing *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)); *Russell v. N.Y. Univ.*, No. 15 Civ. 2185, 2017 WL 3049534, at *34 (S.D.N.Y. 2017) (collecting cases).

Defendant challenges Plaintiff's (1) breach of warranty claim on the grounds that, *inter alia*, Plaintiff lacked standing (*id.* at 12-14) and (2) *re ipsa loquitor* claim on the grounds that Defendant

was not in possession or control of the Pump at the time of the fire or more than a year afterwards (*id.* at 19-20). Plaintiff fails to address any of these arguments, instead focusing on establishing the existence of a material fact as to whether the Pump malfunctioned or had a defect. Accordingly, the Court deems these claims abandoned and dismisses Plaintiff's claims for breach of express and implied warranties and *re ipsa loquitor*. *Banyan*, 2021 WL 2156226, at \*3 (affirming decision deeming plaintiff's claim abandoned where plaintiff failed to address defendants' arguments in plaintiff's opposition brief).

Having dismissed Plaintiff's claims for breach of warranty and *re ipsa loquitor*, the Court turns to Plaintiff's claim for strict products liability and negligence.

## I.   Strict Products Liability and Negligence Claims

Because "[u]nder New York law, strict liability and negligence are functionally equivalent," *Cosh v. Atrium Med. Corp.*, No. 1:18-cv-08335 (ALC), 2020 WL 583826, at \*2 (S.D.N.Y. Feb. 6, 2020) (collecting cases); *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 509 (S.D.N.Y. 2018) (same), the Court will analyze Plaintiff's strict liability and negligence claims using the same standards.[2] To prevail on a products liability or negligence action, a plaintiff must show that (1) the product was defective and (2) the defect was a substantial factor in bringing about the injury." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 86 (2d Cir. 2006) (citing *Fritz v. White Consol. Indus., Inc.*, 306 A.D.2d 896, 898, 762 N.Y.S.2d 711 (2003)) ("It is well settled that whether an action is pleaded in strict products liability or negligence, it is a consumer's burden to show a defect in the product was a substantial factor in causing the injury); *see also Zsa Zsa Jewels, Inc. v. BMW of N.*

---

[2] To assert a claim for strict liability or negligence, a plaintiff must prove a defect caused his injury. *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 86 (2d Cir. 2006). "[B]ut to show negligence, the plaintiff must also prove that the injury caused by the defect could have been reasonably foreseen by the manufacturer." *Id.* (citing *Robinson v. Reed–Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 426 N.Y.S.2d 717, 720–21, 403 N.E.2d 440 (1980)). As neither Defendant nor Plaintiff raise the issue of reasonable foreseeability in their papers, the Court declines to address this issue and analyzes Plaintiff's negligence and strict liability claims together.

*Am.*, LLC, 419 F. Supp. 3d 490, 506 (E.D.N.Y. 2019). Under New York law, a manufacturer may be held liable for a defective product if the product: (1) contains a manufacturing flaw; (2) is defectively designed; or (3) is not accompanied by adequate warnings for the use of the product." *Bozick v. Conagra Foods, Inc.*, No. 19-CV-4045 (LJL), 2022 WL 4561779, at *24 (S.D.N.Y. Sept. 28, 2022) (citing *In re New York City Asbestos Litig.*, 59 N.E.3d 458, 469 (N.Y. 2016)).

As with its claims for breach of warranty and *re ipsa loquitor*, Plaintiff fails to address Defendant's arguments seeking to dismiss Plaintiff's (1) design defect claim on the grounds that Plaintiff failed to offer evidence of an alternative safer design (Def. Mem. at 10-11) and (2) failure to warn claim on the grounds that Plaintiff failed to introduce any supporting evidence (*id.* at 11). The Court finds these claims abandoned and thus dismisses Plaintiff's products liability and negligence claim to the extent that they arise under these two theories. *See Banyan*, 2021 WL 2156226, at *3. Plaintiff's remaining claims are thus for strict products liability and negligence based on a manufacturing defect. For the following reasons, the Court denies Defendant's motion for summary judgment with respect to these claims.

  *A. Legal Standard*

Under New York law, "[t]o plead and prove a manufacturing flaw under either negligence or strict liability, [a] plaintiff must show that a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or [ ] defective materials [ ] used in construction." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (quoting *Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 129 (1981)). The defect must also be the cause of plaintiff's injury. *Id.* "[A] manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 890 (S.D.N.Y. 2018) (quoting *Colon*, 199 F. Supp. 2d at 85).

A plaintiff may plead a manufacturing defect based on circumstantial evidence. *Tears*, 344 F. Supp. 3d at 511 (citing *Speller ex rel. Miller v. Sears Roebuck & Co.*, 100 N.Y.2d 38, 41 (2003)). In such cases, the plaintiff must allege sufficient facts to establish that "the product did not perform as intended and the possibility of other causes has been excluded." *Williamson v. Stryker Corp.*, No. 12 Civ. 7083(CM), 2013 WL 3833081, at *5 (S.D.N.Y. July 23, 2013) (citing *Sanchez v. Stanley-Bostitch, Inc.*, No. 98 Civ. 0494(LMM), 2000 WL 968776, at *2 (S.D.N.Y. July 13, 2000)); *see also Speller*, 100 N.Y.2d at 41 (citing *Halloran v. Va. Chems.*, 41 N.Y.2d 386, 388 (1977)) ("In order to proceed in the absence of evidence identifying a specific flaw, a plaintiff must prove that the product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendants.").

The New York Court of Appeals has applied a two-step inquiry for a plaintiff proving a manufacturing defect using the circumstantial approach: "[i]t may be inferred that the harm sustained by the plaintiff was caused by a [manufacturing defect] . . . when the incident that harmed the plaintiff: (a) was of a kind that ordinarily occurs as a result of product defect; and (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution." *Bozick*, 2022 WL 4561779, at *32 (citing *Speller*, 100 N.Y.2d at 42). Once a plaintiff proves that the injury would not have ordinarily occurred absent a defect, then the defendant must introduce admissible evidence that something other than itself caused the injury. *Id.* at 34. To survive summary judgment, plaintiff must then present "competent" evidence rebutting the other causes of the incident proffered by defendant *Id.* If plaintiff successfully does so, plaintiff raises a triable issue of fact sufficient to defeat summary judgment. *Id.*

*B.   The Parties' Experts*

Plaintiff retained Joseph E. Meyers to conduct an examination of the origin and cause of the fire on the Premises. (Pl. Opp. at 2-3; Meyers Tr. 6:24-7:6.)  Meyers determined that the Pump was a possible cause of the fire. Specifically, Meyers opined that "the heat source responsible for causing the fire, is related to an electric arcing event witnessed by Mr. Shanti Mann at the power cord connection of [the Pump] upon observing sparks shooting up the top . . . and fire spark. The first material ignited being the clothing." (Meyers Tr. 137:9-14.) In reaching this expert conclusion, Meyers relied on the testimony of Shanti Mann as well as Meyers's "observ[ing] of the electric event, which throws the sparks, which would be indicative of a failure at the connection." (*Id.* 107:23-25.)

Meyers retained Nicholas S. Vincenzo, an electrical engineer at Center Engineering, to inspect the Pump collected from the Premises and to evaluate the "role it may have played in the fire" at the Premises. (Def. 56.1 ¶ 22; Vincenzo Tr. 20:6-9.) Vincenzo opined that the fire at the Premises "was ignited by an internal electrical breakdown" in the Pump. (Vincenzo Tr. 51:13-19.) Specifically, Vincenzo "identified multiple electrical arc sites," a "molded case type connection that sits inside the pump," and that "electrical arcing" occurred at that location. (*Id.* 55:12-18.) An "electrical arcing" is "a high resistive type event that results in energy that produces heat and light." (*Id.* 61:14-17.)

Defendant retained Donald Galler, an electrical engineer, to examine the Pump. (Galler Tr. 32:8-17.) With regards to the cause of the fire, Galler testified that the Pump, as manufactured by Defendant, could not have been the source of the fire. (*Id.* 127:6-21.) However, the Pump in the condition as he examined it could have been the source. (*Id.* 128:2-23.) As Defendant asserts and consistent with the Court's understanding, Galler opines that "the only way the Pump could have been the cause of the fire is if it was modified after it was sold." (Reply at 8-9 (citing Galler Tr. 127:6-

128:23).) Accordingly, "the way [Galler] examined the Pump, with the connector outside the Pump, the Pump may have been the cause of the fire." (Pl. Opp. at 11 (citing Galler Tr. 128).)

Finally, Defendant retained Adam Goodman to provide expert testimony on whether Meyers conducted his analysis in accordance with the appropriate industry standards and methodology in determining the origin and source of the fire. (Goodman Tr. 18:3-22.)  Goodman concluded that the cause of the fire is "undetermined," specifically testifying that he could not "conclusively connect a heat source with a fuel and a complete ignition sequence to determine a specific item or series of factors that allowed the heat to come into contact with a fuel." (*Id.* 22:3-16.) Finally, Goodman testified that the Pump was a potential ignition source of the fire (*id.* 52:8-14), along with several other potential sources, including other appliances located in the basement, the light fixture, and electrical wiring (*id.* 41:2-42:8, 44:14-44:25).

*C. Analysis*

Defendant argues summary judgment is appropriate because (1) Plaintiff's experts did not offer any opinion or conclusion that a manufacturing defect was the cause of the fire (Def. Mem. at 5-6); Plaintiff fails to establish that the incident would not have occurred in the absence of a defect (*id.* at 6-7); and Plaintiff's experts did not exclude other potential causes of the fire (*id.* at 7-9). In challenging these assertions, Plaintiff argues that the deposition testimony allows for the reasonable inference that the fire was the kind that ordinarily occurs as a result of a product defect, and Defendant fails to meet its burden to produce evidence showing that the fire was not caused by a defect in the Pump. (Pl. Opp. at 7-8.) Rather than identify a different source of the fire, Plaintiff argues, Defendant instead raises issues of credibility that cannot be resolved at the summary judgment stage. (*Id.* at 8-9.) Finally, Plaintiff claims that regardless, there are triable issues of fact regarding whether the Pump malfunctioned and caused a fire. (*Id.* at 10-12.) The Court agrees with Plaintiff.

At the outset, a utility pump starting a fire when used by a consumer is certainly an injury "that ordinarily occurs as a result of a product defect." *Bozick*, 2022 WL 4561779, at \*33 ("A household product bursting into flames or combusting when the product is used by a consumer in a foreseeable manner is precisely the type of extraordinary incident that generally does not occur absent negligence."); *see also Speller*, 100 N.Y.2d at 40 (involving a fire resulting from a kitchen appliance). Mann, who used the Pump to drain the basement of the Premises, testified that while the Pump was plugged in, "the house lights started dimming, and then [he] heard like a little pop" and saw fizz. (Mann Tr. 34:13-36:5.) At that point, Mann testified he realized something was wrong. (*Id.* 36:5-7.) He continued to testify that as he unplugged the Pump, he heard a pop and saw sparks shooting out the top of the Pump, and then the fire started, with the clothes in the basement igniting first. (*Id.* 36:8-19, 37:14-20.) Further, Plaintiff offers expert testimony that an electrical event in the Pump caused the fire. Common sense dictates that a consumer product should not ordinarily catch fire absent a defect. The factfinder could thus reasonably conclude that the Pump malfunctioned due to a manufacturing defect. Accordingly, Plaintiff has satisfied the first step of the inquiry.

Defendant neither argues nor offers evidence that the incident at the Premises is not the type to ordinarily occur as a result of a defect. Rather, in challenging this point, Defendant focuses on the opinion of Plaintiff's experts that the arcing event *could* occur in the absence of a default. (Def. Mem. at 6.) According to Defendant, this preludes liability under a malfunction theory. (*Id.* at 7.) However, Defendant misunderstands the controlling law. Whether there is a potential alternative explanation beyond a product defect is not the question at issue. Rather, the inquiry is limited to whether the incident is of the type that ordinarily does not occur absent a product defect. The Court answers that question in the affirmative.

Defendant attempts to argue that Plaintiff's expert Vincenzo testified that the fire would have occurred absent a manufacturing defect in the Pump. (Def. Mem. at 7.) However, Defendant misconstrues Vincenzo's testimony. He merely states that it is possible that the arcing event could have occurred in the absence of a manufacturing defect, and that he has not identified any particular manufacturing defect in the Pump. (Vicenzo Tr. 92:20-93:11.) In no way can this testimony be construed as "admitting" that the arcing event that allegedly caused the fire would have occurred without a defect in the Pump. (*See* Def. 56.1 ¶ 24; Pl. 56.1 Response ¶ 24.)

Finally, Defendant also attempts to refute Mann's testimony regarding the events preceding the fire as he operated the Pump (*see* Reply at 5), but such an argument is also improper at this stage. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Zsa Zsa Jewels, Inc.*, 419 F.Supp.3d at 520 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). In determining whether summary judgment is appropriate, the Court may only determine whether a jury "could reasonably believe" Mann's testimony, and the Court finds that it could. *Id.*

Having established the first prong of the inquiry, the burden now shifts to Defendant to introduce evidence that the incident was not caused by a defect in the product. Defendant, however, offers zero theories of its own regarding the cause of the fire. Rather than proffering its own evidence to establish that Plaintiff's injuries were not caused by a defect in the Pump, Defendant instead challenges Plaintiff's expert testimony regarding the cause of the fire.

Here, as Defendant acknowledges and Plaintiff concedes, neither of Plaintiff's experts developed an opinion as to whether there was a manufacturing defect or design defect in the Pump. Vincenzo did not develop an opinion as to the existence of manufacturing defects in the Pump, the design of the Pump, or the adequacy of warnings regarding the Pump (Def. 56.1 ¶¶ 23, 25; Vincenzo

12

Tr. 46:12-20, 47:21-25.) That said, Vincenzo concluded that the Pump caused the fire. (Vincenzo Tr. 51:13-19.) And while it is true that Meyers did not offer any opinion or conclusion that the Pump contained a manufacturing defect (Def. Mem. at 5 (citing Mann Tr. 125:19-25, 125:2-5, 125:8-13)), Meyers's expert opinion was explicitly limited to the cause and origin of the fire, and he concluded that the pump was a possible cause based on the testimony of Mann. (Meyers Tr. 92:21-22.) Moreover, while Meyers stated that he did not eliminate the light fixture or the ceiling as a cause of the fire, he did state that the area of origin of the fire was the floor, and he eliminated the ceiling based on Mann's description of "the event of the sparking and the arcs flying from the power cord of the blue pump." (Mann Tr. 94:3-95:6.) The consistent testimony of Plaintiff's experts establish that it is their opinion that the fire was caused by electrical event in the Pump. The question raised by Plaintiff, therefore, is whether this electrical event was due to a manufacturing defect in the Pump or some other cause. The Court finds such question is best left for the jury.

Moreover, not reaching an opinion on whether a defect actually existed is *not* the same as failing to identify a defect. (*See* Reply at 4.) Despite Defendant's assertions, that there may dexist other causes of the fire beyond a manufacturing defect and Plaintiff has failed to eliminate them does not warrant dismissal of Plaintiff's claims at this stage. (*See* Reply at 4.) Rather, "[t]he only alternative explanations that the plaintiff is required to rule out are those that the *defendant* has proposed." *Zsa Zsa Jewels, Inc.*, 419 F.Supp.3d at 521. As Defendant has offered zero alternative explanation, it is not Plaintiff's burden to disprove any hypothetical cause. *See Sokolovic v. CVS Health*, No. 17CV6609RPKSJB, 2023 WL 2742148, at *13 (E.D.N.Y. Mar. 31, 2023) ("Defendants have not responded with evidence showing that the leak is attributable to something other than a manufacturing defect, and so the Court cannot conclude as a matter of law that defendants are entitled to summary judgment."); *Florentino v. Am. Lifts*, No. CV063553BMCMDG, 2008 WL 11417177, at *9

13

(E.D.N.Y. Apr. 15, 2008); ("[P]laintiff has offered circumstantial evidence based on which a jury could determine that the harm plaintiff sustained was caused by a product defect, and defendant has offered no alternate cause for the failure supported by admissible evidence. Summary judgment is therefore precluded.") (collecting cases); *Giordano v. PGT Indus., Inc.*, No. 04 CIV. 9246WCC, 2007 WL 4233002, at *5 (S.D.N.Y. Nov. 30, 2007) (summary judgment precluded where defendants failed to present any evidence the accident could have been caused by something not attributable to themselves); *Sanchez v. Stanley-Bostitch, Inc.*, No. 98 CIV 0494 LMM, 2000 WL 968776, at *3 (S.D.N.Y. July 13, 2000) (denying summary judgment on the ground that defendant failed to exclude other possible causes of the accident where defendant did not offer admissible evidence establishing that a manufacturing defect did not cause plaintiff's injuries); *Graham v. Walter S. Pratt & Sons Inc.*, 271 A.D.2d 854, 706 N.Y.S.2d 242 (2000) (finding defendant's offering of other possible causes of the accident, without providing evidence of those other causes, insufficient to satisfy its burden to establish plaintiff's injuries were not caused by a manufacturing defect).

Indeed, Defendant fails to introduce any expert opinions or testimony from its experts.[3] Even if Defendant had, the expert evidence would be insufficient to satisfy Defendant's burden as it does not provide an alternative explanation for the fire. The expert testimony of Galler and Goodman merely speculates about alternate causes of the fire. Goodman simply concludes that the cause of fire is "undetermined," and Galler testified that the Pump may have been the cause of the fire. Neither of these conclusions actually identify a potential cause of the fire other than Defendant. *See Florentino*, 2008 WL 11417117 at *9 (summary judgment precluded where defendant "offered no alternative cause for the failure supported by admissible evidence"); *Sanchez*, 2000 WL 968776 at *4 (summary

---

[3] The transcripts of Galler and Goodman were attached to Plaintiff's Declaration of Stuart D. Markowitz in Opposition. (*See* ECF No. 48.)

judgment denied where defendant did not present sufficient evidence that the cause of the accident was attributable to someone other than itself).

Because Plaintiff has established the fire would not ordinarily occur absent a defect and Defendant has failed to provide an alternative explanation for the fire, the Court finds Plaintiff has raised a triable issue of fact. *Zsa Zsa Jewels, Inc.*, 419 F.Supp.3d at 521 ("[O]nce a plaintiff establishes that the incident occurred under circumstances ordinarily caused by a defective product, the burden falls on the defendant to proffer an alternative explanation."). Accordingly, the Court declines to grant summary judgment, and denies Defendant's motion to dismiss Plaintiff's strict products liability and negligence claims based on a manufacturing defect.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The Court dismisses all of Plaintiff's claims *except* its claims for negligence and strict products liability based on a manufacturing defect.

The Parties are directed to appear for a telephonic pre-trial conference on April 25, 2024 at 11:00 a.m. To access the telephonic pre-trial conference, please follow these instructions: (1) Dial the meeting number: (877) 336-1839; (2) enter the Access Code: 1231334#; (3) press pound (#) to enter the conference as a guest.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 46.


Dated:   March 25, 2024                                    SO ORDERED:
         White Plains, New York

                                                        _____
                                                        NELSON S. ROMÁN
                                                        United States District Judge