USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/28/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STATE FARM FIRE & CASUALTY COMPANY
a/s/o MIRIAM PEREZ,

                       Plaintiff,

   -against-

PENTAIR FLOW TECHNOLOGIES, LLC,

                       Defendant.

7:21-cv-6679 (NSR)

**OPINION & ORDER**

---

NELSON S. ROMÁN, United States District Judge:

    Plaintiff State Farm Fire and Casualty Company ("Plaintiff" or "State Farm"), as subrogor of Miriam Perez, commenced this action on June 14, 2021, asserting strict product liability, negligence, and breach of warranty claims against Defendant Pentair Flow Technologies, LLC ("Defendant" or "Pentair") for damages arising from a house fire allegedly caused by a pump manufactured by Pentair. (ECF No. 1.) Presently before the Court is Defendant's Motion for Reconsideration urging the Court to reconsider its March 25, 2024 opinion (the "Decision"), which denied Defendant's motion for summary judgment in part. (ECF No. 54.) For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

### I. Factual Background

    For purposes of this motion, the Court will presume familiarity with the facts and will only provide a brief overview. Miriam Perez, subrogee of Plaintiff State Farm, owned a home located at 15 Greenridge Way, Spring Valley, New York. Prior to July 15, 2020, State Farm issued an insurance policy to Perez, insuring her against, *inter alia*, covered real property and personal property damage. The policy covered the relevant time period.

On July 15, 2020, Shanti Mann, Perez's daughter's fiancé, noticed that the basement of the Premises was flooded, and used a Simer Submersible Utility Pump, 2300-4 (the "Pump") to remove the excess water from the basement. Sometime later, while he was outside in the yard, Mann noticed that the Pump had stopped working, at which point he returned to the basement and saw that the Pump had not removed the excess water. Mann went to unplug the Pump, testifying that as he unplugged it, "the pop, and, like, spark[s] started shooting out the top" right in front of him. Mann ran up the stairs to exit the basement, and stated he heard the pop again and saw clothes catch fire. The fire department then arrived and extinguished the basement fire.

As a result of the fire, State Farm, pursuant to its obligations under the insurance policy, paid $285,949.34 to its subrogor Perez. State Farm now seeks to hold Defendant Pentair, which designed and manufactured the Pump, strictly liable for the damages amount paid.

## PROCEDURAL HISTORY

State Farm commenced this action by filing a Complaint on June 14, 2021 in the New York State Supreme Court, County of Rockland, asserting claims for negligence, strict products liability, and breach of warranty. (ECF No. 1.) On August 6, 2021, Pentair removed the action to this Court. (*Id*.) On June 10, 2022, pursuant to a stipulation by the parties, State Farm filed its First Amended Complaint ("FAC"). (ECF No. 25.) For months thereafter, the parties engaged in extensive discovery, which concluded on February 3, 2023. (See ECF No. 41.) On June 13, 2023, the parties filed their papers related to Defendant's motion for summary judgment. On March 25, 2024, the Court issued its opinion denying Defendant's motion. (ECF No. 54.) On April 8, 2024, Defendant filed a motion to reconsider (the "Motion") (ECF No. 57.) along with a memorandum of law in support ("Def.'s MoL."). (ECF No. 58.) On June 24, 2024, Defendant filed a reply memorandum of law (the "Reply"). (ECF No. 65.) On the same day, Plaintiff filed a memorandum of law in opposition (the "Opp."). (ECF No. 66.)

**STANDARD OF REVIEW**

Motions for reconsideration are governed by Local Civil Rule 6.3 and Fed. Rul. Civ. Pro. 60(b). The standard for granting a reconsideration motion is strict. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Doe v. N.Y. City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983). The motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." *In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 311-12 (S.D.N.Y. 2012). Reconsideration of a court's previous order is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (internal citation and quotation omitted), aff'd sub nom. *Tenney v. Credit Suisse First Boston Corp.*, Nos. 05 Civ. 3430, 05 Civ. 4759 & 05 Civ. 4760, 2006 WL 1423785, at *1 (2d Cir. 2006).

**DISCUSSION**

Defendant urges this Court to reconsider its March 25, 2024 opinion, which denied Defendant's motion for summary judgment in part. Defendant argues that the Court correctly identified the relevant law but incorrectly applied it. First, Defendant argues that the Court incorrectly began its analysis by concluding that a utility pump starting a fire was the type of injury that ordinarily occurs as a result of a product defect. (Def.'s MoL. at 1.) And that such a conclusion improperly turns a circumstantial evidence case into a *res ipsa loquitor* case. (*Id.*) Second, Defendant argues that this case is not like *Bozick v. Conagra Foods, Inc.*, No. 19-CV-4045 (LJL), 2022 WL 4561779 (S.D.N.Y. Sept. 28, 2022) or *Speller ex rel. Miller v. Sears, Roebuck & Co.*, 100 N.Y.2d 38, 790 N.E.2d 252 (2003), which the court cited to in its Decision.

3

(*Id*. at 2.) But much more akin to *Rosa v. Gen. Motors Corp.*, 226 A.D.2d 213, 640 N.Y.S.2d 548 (1996) and *Smith v. Squire Homes, Inc.*, 38 A.D.2d 879, 329 N.Y.S.2d 243 (1972). (*Id*.) And finally, Defendant argues that Plaintiff's own engineer offered evidence that arcing—the alleged cause of the fire—could have been caused by something other than a defect and that, as a result, summary judgment would have been appropriate. (*Id*. at 3.) It is worth noting that none of Defendant's arguments implicate an intervening change of controlling law or the availability of new evidence as the standard for reconsideration typically requires. Instead, Defendant re-hashes an argument that was previously made and previously rejected. That said, the Court will address Defendant's argument again.

First, under New York law, a party may prove and plead a manufacturing flaw through circumstantial evidence. *See Speller ex rel. Miller*, 100 N.Y.2d 38. There are two prongs to satisfy the circumstantial approach: (1) that the injury was of a kind that ordinarily occurs as a result of a product defect; and (2) that the injury was not, in the particular case, solely the result of causes other than product defect. Defendant takes issue with the Court's conclusion that Plaintiff's injury was of a kind that ordinarily occurs as a result of product defect. The Court's conclusion, however, is backed by ample caselaw. *See Bozick v. Conagra Foods, Inc.*, No. 19-CV-4045 (LJL), 2022 WL 4561779 (S.D.N.Y. Sept. 28, 2022) (finding that a household product bursting into flames undoubtedly qualifies as an injury that ordinarily occurs as a result of a product defect); *Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, 419 F. Supp. 3d 490 (E.D.N.Y. 2019) (concluding that a vehicle catching fire due to low tire pressure was an injury that ordinarily occurs as a result of a product defect); *Speller ex rel. Miller*, 100 N.Y.2d 38 (determining that a refrigerator setting fire due to faulty wiring is an injury that ordinarily occurs as a result of a product defect); *see also* Restatement (Second) of Torts § 328D (1965) (stating

that "certain events do not occur unless someone has been negligent … such as those of … the explosion of boilers). Moreover, Defendant's argument that the Court's conclusion transformed a circumstantial evidence case to a *res ipsa loquitor* case is neither a coincidence nor an error. The circumstantial evidence approach "traces its historical antecedents to the law of negligence and the doctrine of *res ipsa loquitur*, which permits a trier of fact to infer that the harm suffered by a plaintiff was caused by the negligence of the defendant when the event is of a kind that ordinarily does not occur in the absence of negligence and other responsible causes are eliminated by the evidence." *Zsa Zsa Jewels, Inc.*, 419 F. Supp. 3d at 510 (citing Restatement (Second) of Torts § 328D (1965)). Accordingly, Defendant's argument that the Court incorrectly concluded that Plaintiff's injury was of a kind that ordinarily occurs as a result of a defect is without merit.

Second, Defendant argues that this case is not like *Bozick* or *Speller* because Plaintiff failed to exclude all other causes of the accident not attributable to defendants. As a result, Defendant argues, this case is much more akin to *Rosa* or *Smith*. The Court noted in its Decision that Defendant misunderstood controlling law, and it appears that Defendant still does. As discussed *supra*, the circumstantial approach has two prongs: (1) that the injury was of a kind that ordinarily occurs as a result of a product defect; and (2) that the injury was not, in the particular case, solely the result of causes other than product defect. *See Speller ex rel. Miller*, 100 N.Y.2d 38 at 42. What Defendant misunderstands is that once Plaintiff has satisfied the first prong—as it has here—the burden shifts to Defendant to propose an alternative explanation for the harm that does not implicate a product defect. *See Sanchez v. Stanley-Bostitch, Inc.*, No. 98-CV-494 (LMM), 2000 WL 968776, at *3 (S.D.N.Y. Jul. 13, 2000) (noting that "defendant bears its own burden of offering some evidence in admissible form establishing that the plaintiff's

5

injuries were not caused by a defect in the product") (internal citations and alterations omitted). Plaintiff is not required to exclude all other causes until Defendant has satisfied this burden. In arguing the contrary, Defendant cites several cases in support of his argument, but Defendant fails to understand that in each of those case, this burden was met. In *Ramos*, there was evidence offered by Defendant's expert that there were other possible causes of the explosion that may have been introduced outside of or after defendant's involvement and that due to defendant's quality control procedures it was "virtually impossible" for their product to have an internal fault. 10 N.Y.3d 218 at 223-24. So too in *Smith*. There, the record contained evidence that the fire was caused by a leak in a union made by the plaintiff. *Smith*, 38 A.D.2d at 879. But here, Defendant has offered no such evidence to the Court. Accordingly, Defendant failed to meet the burden of producing some evidence in admissible form establishing that the plaintiff's injuries were not caused by a defect in the product.

Finally, Defendant argues that Plaintiff's own engineer offered evidence that the arcing could have been caused by something other than a defect. The Defendant, again, confuses the issues. The Court ruled in its prior opinion that the parties' experts had not settled on what the precise cause of the fire was and that this was precisely why summary judgment was not appropriate. *See State Farm Fire & Cas. Co. v. Pentair Flow Techs., LLC*, No. 21-CV-6679 (NSR), 2024 WL 1257091, at *6 (S.D.N.Y. Mar. 25, 2024) (noting that Defendant had misconstrued the relevant testimony in that Plaintiff's expert in no way admitted that the arcing event would have occurred without a defect and Defendant had not offered any independent theories or explanations). Moreover, the Court determined that given the testimony, summary judgment would not be appropriate, and the ultimate determination would be better left to a jury. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions." *Zsa Zsa Jewels, Inc.*, 419 F.Supp.3d at 520 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). Defendant seems to have missed this point too. Accordingly, Defendant has failed to point the court to any error from its Decision.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Reconsideration is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 57.

The Parties are directed to appear for a telephonic pre-trial conference on April 3, 2025 at 12:00 p.m. To access the telephonic pre-trial conference, please follow these instructions: (1) Dial the meeting number: (877) 336-1839; (2) enter the Access Code: 1231334#; (3) press pound (#) to enter the conference as a guest.

Dated:   February 28, 2025                          SO ORDERED:
           White Plains, New York

                                                      NELSON S. ROMÁN
                                                 United States District Judge